J-S01041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ERNEST WILLIAMS | |
| Appellant | No. 3010 EDA 2014 |

Appeal from the Judgment of Sentence September 24, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008700-2012

BEFORE: GANTMAN, P.J., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED DECEMBER 30, 2015**

Appellant, Ernest Williams, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for aggravated assault, possessing instruments of crime, and carrying firearms on public streets in Philadelphia, and his bench trial conviction for persons not to possess firearms.[1] We affirm.

The trial court opinion fully sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Appellant raises the following issues for our review:

>    DID THE JURY IMPROPERLY CONVICT APPELLANT…OF
>    AGGRAVATED    ASSAULT    WHERE    THERE    WAS
>    INSUFFICIENT    EVIDENCE    TO    OVERCOME    THE

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 907(a), 6108, 6105(a)(1), respectively.

COMMONWEALTH'S BURDEN TO DISPROVE APPELLANT'S CLAIM OF JUSTIFICATION?

DID THE TRIAL COURT IMPROPERLY INSTRUCT THE JURY ABOUT THE JUSTIFICATIONS OF SELF-DEFENSE AND DEFENSE OF OTHERS BY: (1) FAILING TO CLARIFY THE JURY'S DUTY TO CONSIDER THE JUSTIFICATIONS OF SELF-DEFENSE AND DEFENSE OF ANOTHER SEPARATELY; (2) FAILING TO INCORPORATE THE STAND YOUR GROUND LAW; AND (3) FAILING TO DEFINE DWELLING?

(Appellant's Brief at 3).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Charles J. Cunningham, III, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed June 11, 2015, at 7-12) (finding: **(1)** various witnesses testified that fight broke up immediately after Appellant fired first gunshots; Appellant was able to retreat without exposing himself or his wife to additional harm; nevertheless, Appellant continued shooting as he chased victim; no evidence suggested victim was armed or continued to fight Appellant or his wife after Appellant's initial shots; Commonwealth met its burden of proof that Appellant became aggressor when he chased unarmed victim onto porch where Appellant shot victim at point blank range; **(2)** prior to instructing jury, court advised counsel that it would issue standard justification charge with exception of inapplicable segment; Appellant's counsel raised no objection to jury instructions issued by court; therefore, Appellant's challenge to jury

instructions is waived;[2] moreover, court's instruction made clear to jury that if it found Appellant reasonably believed he had to use deadly force to stop beating of his wife, he would have been justified in using deadly force to protect her).[3]  Accordingly, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2015

_____

[2] Appellant's specific claims regarding the court's alleged failure to define "dwelling," and to clarify the jury's duty to consider self-defense and defense of others separately, are also waived because Appellant failed to include them in his Pa.R.A.P. 1925(b) statement. **See Commonwealth v. Castillo**, 585 Pa. 395, 888 A.2d 775 (2005) (holding any issue not raised in Rule 1925(b) statement is waived on appeal).

[3] In its opinion, the court cited the former version of Pa.R.Crim.P. 647(B) when it stated: "No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."  The rule was amended on July 7, 2015, effective October 1, 2015, and the quoted text is now found at Pa.R.Crim.P. 647(C).

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**COURT OF COMMON PLEAS, CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA :

: 3010 EDA 2014

v. :

: CP-51-CR-0008700-2012

ERNEST WILLIAMS :

FILED

**OPINION**

JUN 11 2015

Criminal Appeals Unit
First Judicial District of PA

**STATEMENT OF THE CASE**

This appeal arises out of the brutal shooting of the complaining witness on June 15, 2012. Defendant is appealing his convictions for Aggravated Assault and related gun charges, complaining that the Court erred in its rulings relating to his defense of justification in defense of another. Defendant's complaints are without merit.

**PROCEDURAL HISTORY**

On June 19, 2012, Defendant was arrested and charged with numerous offenses including, inter alia; 1) Criminal Attempt pursuant to 18 Pa.C.S.A. 901(a) to commit Murder of the First Degree pursuant to 18 Pa.C.S.A. §2502; 2) Aggravated Assault pursuant to 18 Pa.C.S.A. §2702(a); 3) Possession of Firearm by a Person Prohibited pursuant to 18 Pa.C.S.A. §6105(a)(1); 4) Carrying Firearms on Public Streets or Public Property in Philadelphia pursuant to 18 Pa.C.S.A. §6108; and 5) Possession of an Instrument of a Crime with Intent pursuant to 18 Pa.C.S.A. 907(a) (PIC). On June 5, 2014, at the conclusion of his jury trial, Defendant was found guilty on the charges of



Aggravated Assault, Carrying a Firearm in Philadelphia and PIC. The jury was unable to reach a verdict on the charge of Attempted Murder. After the jury verdict taken, Defendant waived his right to a jury trial and was found guilty on the charge of Possession of a Firearm by a Person Prohibited.

On September 24, 2014, Defendant was sentenced to consecutive periods of confinement in a state correctional facility of 7 to 14 years on the charge of Aggravated Assault, and 3 to 6 years on the charge of Possession of Firearm by a Person Prohibited, for a total period of confinement of 10 to 20 years. Defendant was found guilty without further penalty on the two remaining weapons charges.

On October 20, 2014, Defendant timely filed the instant appeal to the Superior Court of Pennsylvania. On November 5, 2014, this Court filed and served on Defendant an Order pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, directing Defendant to file and serve a Statement of Errors Complained of on Appeal, within 21 days of the Court's Order. On December 16, 2014, the Superior Court entered an order permitting counsel to withdraw and remanding the matter back to the Court for appointment of new appellate counsel. On February 11, 2015, Bobby Ochoa, III, Esq., was appointed to represent Defendant for the purposes of the within appeal. On February 25, 2015, this Court filed and served on Defendant a new Order pursuant to Rule 1925(b) directing Defendant to file and serve a Statement of Errors Complained of on Appeal, within 21 days of the Court's Order. On February 25, 2015, Defendant filed a petition for an extension of time within which to file his 1925(b) statement of errors, which the Court granted. On March 2, 2015, Defendant timely filed his Statement of Errors, raising three issues, namely:

1. "Justification Instruction: The trial court provided a flawed instruction to the jury regarding the justification of self-defense and defense of others. The trial court's instruction did not address 18 Pa.C.S. § 506(b) regarding the use of force for the protection of other persons, which states that the actor is not obliged to retreat to any greater extent than the person whom he seeks to protect. The prosecutor argued vigorously and cross-examined Williams—and the court also questioned Williams directly on this point—regarding the time he spent in the house to retrieve the gun and his clear opportunity to retreat by simply locking the door. The implication that he had sufficient time to retreat—and defeating any justification claim—was misleading. As the statute makes clear, Williams was not obliged to retreat to any greater extent than his wife, the person whom he sought to protect. As a result, the instruction was flawed and legally insufficient. *See* N.T 06/04/2014 at 155-57, 159-63, 205-12.

2. Sufficiency of the Evidence—Disproving Justification: The evidence was legally insufficient to overcome the Commonwealth's burden to disprove Williams' use of force in defense of another claim as a justification for the shooting, in particular rendering the evidence legally insufficient to support the criminal intent element of the several other charges. As a result, the trial court improperly denied Williams' oral motion for a judgment of acquittal at the close of the Commonwealth's case-in-chief. *See* N.T. 06/04/2014 at 102.

3. Scope of Justification: Additionally, the trial court improperly relied on the prosecutor's statement that a proper claim of self-defense is legally inadequate to justify a violation of the uniform firearms act under Section 6105. This legal conclusion was incorrect. The trial court was not bound by the jury's decisions and was free to credit Williams' self-defense claim as justification for his violation of Section 6105. *See* N.T. 06/05/2014 at 17."

## EVIDENCE AT TRIAL

Ms. Linesa Gunther testified that on June 15, 2012, she was living on the 5100 block of Harlan Street in the City of Philadelphia, where she got into a physical fight with her neighbor, Ms. Millicent Williams, whom she knew from the block, but did not socialize with. She testified that the fight arose out of an altercation between her son and daughter and Ms. Williams' son in front of the Williams's home. (N.T., 6/3/14 pgs. 48,

3

50, 51, 54, 57, 80) At some point during the fight she was punched in the back of the head by Defendant, at which time her brother, the complainant Hakiem Gunther, and her cousin began fighting with Defendant. (N.T., 6/3/14 pgs. 56, 57) Defendant then broke away from her brother and cousin, ran into the house and returned with a gun shooting into the crowd as he came off his porch. (N.T., 6/3/14 pgs. 57, 58, 61, 73, 74)

Ms. Gunther testified that everyone immediately fled the scene with her brother, being chased by Defendant, ran back towards her home. "He ran down the street after my brother. He ran up on the porch. Hakiem, that's my brother, he couldn't get in the house, and he started shooting. Hakiem fell. He then stood over him and shot three or four more times." (N.T., 6/4/14 pgs. 60, 85) Defendant's gun emptied after firing additional shots into the house, at which point he left her porch. (N.T., 6/3/14 pgs. 62, 63)

The complainant, Mr. Hakiem Gunther, testified that at approximately 9:00 p.m., on June 5, 2012, as he was approaching his sister's house for a visit, he observed his sister embroiled in a physical fight with another woman. As he drew near he observed a male with white hair get involved in the fight. When he called out that's it's "a girl fight," he got hit and began fighting with the white haired male. (N.T., 6/4/14 pgs. 89-90, 100, 101)

At some point, thinking everything was over, he began walking away when he heard someone call out, "He got a gun." He next remembers being shot on the porch of his sister's house by a figure standing over him, before he passed out. (N.T., 6/3/14 pgs. 91-94, 1'03) He testified that he was shot three times, in the groin, thigh and back and is now paralyzed as a result. (N.T., 6/3/14 pgs. 95, 96)

4

Ms. Centoria Gunther testified that on June 15, 2012, she was living on the 5100 block of Harlan Street with her sister, Ms. Linesa Gunther, and her cousin. (N.T., 6/4/14 pgs. 9, 18) At approximately 9:00 p.m. she saw her sister engaged in a fight in front of the Defendant's house with Defendant's wife, whom she knew from the block and also did not socialize with,. (N.T., 6/4/14 pgs. 9, 11, 12, 16, 52) While the two women were fighting, she saw Defendant punch her sister in the back of the head, at which point, her brother, the complainant Hakim Gunther, and her cousin began fighting with Defendant. (N.T., 6/4/14 pgs. 17, 18, 49)

She testified that Defendant got up, after falling to the ground and being kicked, ran into his house and, within a minute or two, came back out with a gun shooting from the top of his steps in the direction of Mr. Gunther. (N.T., 6/4/14 pgs. 17, 19-21, 44) Defendant then chased after Mr. Gunther, firing shots at him, as he ran towards her house. (N.T., 6/4/14 pgs. 22, 24, 45) When Mr. Gunther reached the porch of her house Defendant shot him from a distance of three feet striking him in the back, causing him to fall to the ground. (N.T., 6/4/14 pgs. 22, 24, 31, 46) When Defendant couldn't gain entry into the house through the locked door, he fled from the porch, running back into his own home. (N.T., 6/4/14 pgs. 110, 111)

Mrs. Millicent Williams, Defendant's wife, testified that she got into a physical firght with Ms. Linesa Gunther, arising out of a dispute between their children. (N.T., 6/4/14 pgs. 108, 112, 113) She also testified that Defendant became involved in a fight with two men during which he was able to break away and retrieve a gun from the house. Defendant then returned and fired two shots. On hearing the two shots, the "fight

5

stopped. That's when they let me go, after I heard these two shots, everybody just --- they started running and they let me go..."

Philadelphia Police Officer Darnell Jessie testified that at approximately 9:00 p.m., on June 15, 2012, he was in uniform on routine patrol in a marked patrol car, and he responded to a radio call of a shooting. (N.T., 6/3/14 pgs. 29, 30) He arrived on the call at 5134 Harlan Street "less than two minutes later" and found Mr. Gunther lying on his back, in a pool of blood on the front porch, with another man hovering over him calling out, "Stay with me." (N.T., 6/3/14 pgs. 31, 32, 35) 36) Concerned for the life of the victim, Officer Jessie placed Mr. Gunther in the back of his patrol car and immediately transported him directly to the Hospital of the University of Pennsylvania for treatment. (N.T., 6/3/14 pgs. 35, 36, 46)

Philadelphia Police Officer Richard Link testified that at approximately 9:00 p.m., on June 15, 2012, he too responded to a radio call of a shooting on the 5100 block of Harlan Street. On arriving at 5134 Harlan Street, he observed a black male lying unconscious on the porch. (N.T., 6/3/14 pgs. 110, 111) After securing the scene, he recovered two 45 caliber fired shell casings and one live round from the street near the porch where he first observed the complainant. (N.T., 6/3/14 pgs. 119, 120) He also testified that the only blood documented at the scene was found on the porch and the steps leading up to it. He attributed the presence of the blood on the steps to the complainant being carried from the porch to the patrol car for transport to the hospital. (N.T., 6/3/14 pg. 121)

6

## DISCUSSION OF THE ISSUES RAISED

### I. THE COURT'S CHARGE ON JUSTIFICATION WAS PROPER.

In his first statement of errors, Defendant complains, the Court erred in not charging the jury that Defendant "was not obliged to retreat to any greater extent than his wife, the person whom he sought to protect." Defendant's complaint misstates the record and is without merit.

The Pennsylvania Rules of Criminal Procedure (Pa. R. Cr. P.) at Rule 647(B) provide in pertinent part: "No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." In considering the application of Rule 647(B) The Supreme Court of Pennsylvania held, "that under Criminal Procedural Rules 603 and 647(B), the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points." *Commonwealth v. Pressley*, 584 Pa. 624, 887 A.2d 220, at 225 (2008). More recently, the Superior Court of Pennsylvania held that the defendant's failure to object to the trial court's refusal to include his request for instructions on the law of "justification/self-defense" constituted a waiver of that issue. *Commonwealth v. Marquez*, 209 PA Super 170, 980 A.2d 145 (2009).

Prior to charging the jury, the Court advised counsel, without objection, that it would deliver the standard justification charge, Pa. SSJI (Crim.) §9.502, except for the third segment, which the Court found to be inapplicable. (N.T., 6/4/14 pgs. 169, 170) At the conclusion of its charge, the Court inquired twice of counsel if they had "anything

7

additional before the jury retires to deliberate?" (N.T., 6/4/14 pgs. 212, 218) Both counsel answered in the negative. (N.T., 6/4/14 pg. 218) Having raised no objection to the Court's charge, Defendant's complaint is deemed waived. *Marquez, Id.*

"It is well-settled that when reviewing the adequacy of a jury instruction, we must consider the charge in its entirety to determine if it is fair and complete. The trial court has broad discretion in phrasing the charge and the instruction will not be found in error if, taken as a whole, it adequately and accurately set forth the applicable law." *Commonwealth v. Daniels*, 963 A.2d 409, 430 (Pa. 2009) Moreover, "a trial court is not obligated to instruct a jury upon legal principles which have no applicability to the presented facts. There must be some relationship between the law upon which an instruction is requested and the evidence presented at trial. However, a defendant is entitled to an instruction on any recognized defense which has been requested, *which has been made an issue in the case*, and for which there exists evidence sufficient for a reasonable jury to find in his or her favor." *Commonwealth v. Bohonyi*, 900 A.2d 877, 883 (Pa. Super. 2006)

Defendant misstates the record when he states the Court failed to instruct the jury pursuant to 18 Pa.C.S. § 506(b), that he "was not obliged to retreat to any greater extent than his wife, the person whom he sought to protect." Defendant's overreaction to the Commonwealth's vigorous cross examination, which he wrongly interprets as suggesting "Defendant had sufficient time to retreat—and defeating any justification claim," over-looks the Court's specific instructions regarding justification. The Court instructed the jury that if Defendant "reasonably believed that his wife was in danger of suffering serious bodily injury or death, then the law says he's justified in using deadly force. The

8

lawful defense of others is called justification. If the defendant's actions were justified, you cannot find him guilty." (N.T., 6/4/14 pg. 207) The Court further instructed the jury that if Defendant "reasonably believed he had to use deadly force to stop the beating of his wife, then that's self-defense and he's not guilty of any of these crimes. Even if he was wrong in that judgment but he was reasonable in thinking that, then that's self-defense and he's not guilty of any of these crimes." (N.T., 6/4/14 pgs. 211, 212) Contrary to Defendant's complaint, the Court's makes it clear that, if the jury believed the testimony of Defendant and his wife, Defendant had no duty to retreat and would have been "justified" in using deadly force to protect her.

## II. DENIAL OF DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL WAS PROPER.

Defendant, in his second statement of errors, appears to raise two separate issues. Defendant first appears to complain that the evidence at trial was insufficient to sustain his convictions and, therefore, the Court erred in denying his "oral motion for a judgment of acquittal at the close of the Commonwealth's case-in-chief." Defendant then appears to complain that the "evidence was legally insufficient to overcome the Commonwealth's burden to disprove Williams' use of force in defense of another claim as a justification for the shooting, in particular rendering the evidence legally insufficient to support the criminal intent element of the several other charges." Defendant's complaints are without merit.

The Pennsylvania Rules of Criminal Procedure (Pa.R.Crim.P.) at Rule606(A) provides in part: "A defendant may challenge the sufficiency of the evidence to sustain a

9

conviction of one or more of the offenses charged in one or more of the following ways: (1) a motion for judgment of acquittal at the close of the Commonwealth's case-in-chief." "A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Fisher*, 47 A.3d 155, 157 (Pa. Super. 2012) citing *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751-52 (Pa. 2000) In considering such a claim, the Superior Court "may not weigh evidence, nor substitute the fact-finder's judgment with this Court's...The facts and circumstances which have been established by the Commonwealth are not required to preclude every possibility of innocence...The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000) A court may draw inferences from the facts so long as the inferred facts are more likely than not to flow from the proven facts. *Commonwealth v. Wodjak*, 466 A.2d 991, 996 (Pa. 1983) More specifically, the intent to kill may be proven by circumstantial evidence. *Commonwealth v. Carson*, 569-70, 913 A.2d 220 (Pa. 2006)

At the close of the Commonwealth's case in chief, counsel for Defendant made an oral motion for acquittal only on the charge of attempted murder, which the Court denied. Counsel did not object to the Court's ruling, nor did he renew this motion at any other time. In any event, the jury's inability to reach a verdict on the charge of Attempted Murder, compelled the Court to declare a mistrial, thus rendering Defendant's complaint regarding the denial of his motion for acquittal moot.

Furthermore, Defendant's complaint completely ignores the testimony of the Mr. Gunther and his sisters, all of whom testified that the fight broke up immediately after Defendant fired the first shots, and further, that Defendant continued shooting as he chased Mr. Gunther onto his sisters' porch.

"When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. The Commonwealth sustains this burden if it establishes at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety. The Commonwealth need only prove one of these elements beyond a reasonable doubt to sufficiently disprove a self-defense claim." *Commonwealth v. Ventura*, 975 A.2d 1128, 1143 (Pa. Super. 2009) (Internal citations and quotations omitted) Furthermore, "[t]he law does not require an accused to elect an avenue of retreat where a reasonably prudent person would conclude that such a decision would increase his or her exposure to the threatened harm. *Id.* at 1143-44 "Although the Commonwealth is required to disprove a claim of self-defense ... a jury is not required to believe the testimony of the defendant who raises the claim." *Commonwealth v. Houser*,

11

18 A.3d 1128, 1135 (Pa. 2011) (quoting *Commonwealth v. Carbone*, 574 A.2d 584, 589 (Pa.1990) "It remains the province of the jury to determine whether the accused's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat." *Commonwealth v. McClendon*, 874 A.2d 1223, 1230 (Pa. Super. 2005) (Internal citation omitted)

The testimony of the Commonwealth's witnesses, as discussed above, establishes that Defendant's initial shots effectively broke the fight up and that retreat for Defendant was possible without exposing him or his wife to additional harm. Furthermore, there was no evidence to suggest that Mr. Gunther was armed or continued in the fight after Defendant's initial shots. To the contrary, it is clear from the testimony at trial, that the Commonwealth met its burden in establishing that Defendant, instead of retreating, became the aggressor chasing an unarmed Mr. Gunther up onto the porch where he shot him at point blank range.

## III. DENIAL OF DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL WAS PROPER.

Defendant, in his third statement of errors, complains that the Court erred in relying on "the prosecutor's statement that a proper claim of self-defense is legally inadequate to justify a Violation of the Uniform Firearms Act under Section 6105. This legal conclusion was incorrect. The trial court was not bound by the jury's decisions and was free to credit Williams' self-defense claim as justification for his violation of Section

12

6105." In other words, Defendant misstates the record by implying that the Court accepted the prosecutor's statement as legally binding. To the contrary, the Court fully evaluated Defendant's claim of justification and found it to be lacking. Defendant's complaint is without merit.

After the jury returned its verdict of guilty on the related assault and weapons charges, Defendant elected to waive his right to a jury trial on the bifurcated charge of Possession of a Firearm by a Person Prohibited and was found guilty. 18 Pa.C.S.A. §6105(a)(1) provides that a "person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S.A. §6105(c)(2) provides in part that a "person who has been convicted of an offense under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, ... that may be punishable by a term of imprisonment exceeding two years." At trial, counsel did not object to the entry into the record evidence that Defendant had been convicted of a predicate offense pursuant to §6105(c)(2), to wit, possession with intent to deliver. (N.T., 6/5/14 pg. 16)

As discussed above, although Defendant may have arguably been justified in using force to protect his wife, he lost that justification when he and his wife had the opportunity to safely retreat. Furthermore, 18 Pa.C.S.A. §505(2.3) provides in part that defense of self defense is only available to an actor "who is not in illegal possession of a firearm." Defendant, having been convicted of a predicate offense, was legally barred

13

from possessing a gun pursuant to §6105.

"The rationale for the statutory prohibition of 18 Pa.C.S.A. section 6105 is to protect the public from convicted criminals who possess firearms…and protecting the public from a firearm in the possession or under the control of a convicted criminal." *Commonwealth v. Appleby*, 856 A.2d 191, 195 (Pa. Super. 2004) In addressing the issue of self defense, our Superior Court in *Commonwealth v. Moore*, 49 A.3d 896, 903 (Pa. Super. 2012), vacated on other grounds, 103 A.3d 1240 (Pa. 2014), held that "since Appellant maintained control over the gun after he needed to use it in self-defense, we need not decide whether a prohibited person who retrieves someone else's gun momentarily and uses it solely in self-defense can be convicted under § 6105."

It is clear that Defendant physically possessed a firearm, after the threat of harm had ceased, in violation of §6105(a)(1), as he chased Mr. Gunther onto the porch shooting him at point blank range. At this point, Defendant was not in possession of the gun for the purpose of protecting his wife, but with the intention to inflict serious bodily harm.

Possession of a prohibited item can be established by actual possession or constructive possession. "When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession[.]" *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996), appeal denied, 692 A.2d 563 (Pa. 1997).

> "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be

14

established by the totality of the circumstances. Additionally, it is possible for two people to have joint constructive possession of an item of contraband."

*Commonwealth v. Hopkins*, 67 A.3d 817, 820-21 (Pa. Super. 2013) (internal quotation and citations omitted)

At trial, defendant's wife, Ms. Millicent Williams, testified that the gun used by Defendant belonged to her nephew and was among his things that he had previously brought to their house for safe keeping. (N.T., 6/4/14 pg. 138) She also testified that she asked Defendant to put the gun in a safe place out of reach of her son and that he was the only one in the house who knew where it was kept. (N.T., 6/4/14 pg. 139)

Defendant testified that during the fight he ran into the house to retrieve a gun and came back out shooting into the crowd, hitting Mr. Gunther twice. (N.T., 6/4/14 pgs. 153, 154, 159, 160, 162, 163) He testified further that the gun he had used in the shooting belonged to his nephew and that he kept it under the china closet in the house. (N.T., 6/4/14 pgs. 153, 157)

Prior to finding Defendant guilty, the Court noted for the record that "I'm not bound by what the jury did, I'm doing this on a waiver." The Court also noted that "there are two types of possession. There's constructive possession with the gun in the house, there's a simple possession of the gun in his hand. There's no question that he had it in his hands on the street, he admits to that. He says because he was running out to defend his wife." Considering the totality of the circumstances, Defendant also had constructive possession of the gun; he not only knew it was in his house but he was the only one who knew its location in the house. It is clear that, as *Moore* noted, any possible justification for his possessing the gun on the street ended when the fight broke up and that both his

15

prior possession, to which he admits, and his possession on the street constitute a clear violation of §6105.

## CONCLUSION

The Court finds that any merit Defendant's defense of justification may have had was lost when he pursued an unarmed Mr. Gunther to his front porch and deliberately shot him at point blank range.

BY THE COURT:

June 11, 2015

_____, J.
HON. CHARLES J. CUNNINGHAM, III

16