J-S06022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LACIONE ROBINSON | : | |
| | : | |
| Appellant | : | No. 1986 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 20, 2019
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0003729-2018

BEFORE:  LAZARUS, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED SEPTEMBER 16, 2020**

Lacione Robinson appeals from the judgment of sentence entered following his conviction for Persons not to Possess, Use, Manufacture, Control, Sell, or Transfer Firearms.[1] He challenges the denial of his motion to suppress and the trial court's overruling of his objections to the admission of certain evidence. He also claims that the evidence at trial was insufficient. We affirm.

Robinson was convicted in 2011 of Possession with Intent to Deliver ("PWID"), a felony offense that precludes him from possessing a firearm.[2] The trial court sentenced him to prison, and in 2018, while on parole from that conviction, parole agents searched Robinson's residence. The agents discovered a firearm wrapped in a pair of men's sweatpants in one room of

---

[1] 18 Pa.C.S.A. § 6105.

[2] 35 P.S. 780-113(a)(30).

the house. In that same room, they observed "a small amount of marijuana, [Robinson's] employment identification card, a card addressed to 'King La'cione,' an Access Card with [Robinson's] name on it, a digital scale, and mail with [Robinson's] name on it" but bearing a different address. Trial Ct. Op., filed 8/15/19, at 17. The Commonwealth charged Robinson as above.

Robinson filed a motion to suppress, claiming that the parole agents did not have reasonable suspicion or probable cause to search the house or the room where the agents found the firearm. Pre-Trial Motion, filed 11/13/18, at ¶ 12. He also maintained that because the search was illegal, all evidence recovered in the house was fruit of the poisonous tree. *Id.* at ¶ 17. Robinson also moved to preclude his statements to police. *Id.* at ¶¶ 19, 20.

The court held a hearing on the suppression motion at which Agents Dominic Compano, Lauren Dimaria, and Anthony Sube testified. N.T., Pre-trial Motions Hearing, 1/3/19. The trial court then denied the motion, making the following findings of fact:

> State Parole Agent Dominic Compano was assigned to supervise the Defendant, Lacione Robinson, and had been doing so since the case was transferred to the Allentown office from the Philadelphia office in March of 2018. Agent Compano met [Robinson] on March 14, 2018. At that time, [Robinson] agreed to the terms and conditions of his state parole. He also indicated that he resided at a recovery house located at 1311 Chew Street, Allentown, Lehigh County, Pennsylvania.
>
> On April 26, 2018, Agent Compano attempted a field contact with [Robinson] at the recovery house to no avail. The first home contact that Agent Compano had with [Robinson] was on May 7, 2018, in which he visited the recovery house

located at 1311 Chew Street, Allentown. At that time, [Robinson] produced a positive urine test for amphetamines, opiates, and marijuana. Agent Compano reiterated to [Robinson] the rules of state parole in that drug use was prohibited, and issued [Robinson] a written warning. . . .

\*\*\*

Subsequently, on July 25, 2018, Agent Compano went to the recovery house located at 1311 Chew Street, Allentown and spoke with two (2) residents there. Agent Compano showed these residents a photograph of [Robinson], and they related that [Robinson] had not lived at the recovery house for a month.

On July 26, 2018, after at least ten (10) days of having his whereabouts unknown, [Robinson] reported to the State Parole Office and spoke with Agent Compano. [Robinson] again tested positive for drugs, specifically, amphetamines, opiates, and oxycodones [sic]. In addition, [Robinson] did not provide any evidence of employment. [Robinson] displayed a negative attitude, was argumentative, and would not provide a firm address to Agent Compano. Therefore, Agent Compano approached [Robinson's] girlfriend and asked her where [Robinson] was living. The girlfriend provided an address of 547 West Allen Street, Allentown, Lehigh County, Pennsylvania. At this time, Agent Compano placed [Robinson] on GPS monitoring to track his movements and to learn the location of his residence.

On August 21, 2018, [Robinson] reported to the State Parole Office and spoke with Agent Compano. [Robinson] provided a negative urine. However, [Robinson] was again argumentative and told Agent Compano that he would not obtain full time employment because he was not a slave. Having concerns about supervising [Robinson], Agent Compano requested that [Robinson] return later that day to speak with his supervisor who was not in the office at that time.

When the supervisor returned to the office, Agent Compano discussed the case with her. Specifically, Agent Compano related to his supervisor that [Robinson] was violating his parole by not furnishing him with an address, not obtaining employment, and by providing earlier positive urines. At

that time, the GPS data was reviewed by them, and it revealed that [Robinson] was all over the City of Allentown during all different times of the day. In addition, the GPS showed that [Robinson] was not residing at 547 West Allen Street, Allentown, but at 546 North 4th Street, Allentown, Lehigh County, Pennsylvania. Based on his training and experience, and in light of the facts and circumstances, Agent Compano believed that [Robinson] was either using or distributing drugs in contravention of his conditions of supervision and the law.

As requested, [Robinson] returned in the afternoon on August 21, 2018 to speak with Agent Compano's supervisor. At that time, [Robinson] was detained and placed in shackles and handcuffs. A search of [Robinson's] person located $960.00 in his pocket. [Robinson] was advised by Agent Compano and the supervisor that they planned to search his residence for contraband. . . .

On August 21, 2018, Agent Compano requested that State Parole Agents Lauren Dimaria and Anthony Sube provide assistance in the within matter. They were instructed to go to [Robinson's] residence located at 547 West Allen Street, Allentown to secure the residence in order to preserve any evidence for the impending search. However, Agents Dimaria and Sube were unable to locate the residence and learned that it was an invalid address. When they communicated this information to Agent Compano, Agent Compano confronted [Robinson] and his girlfriend who both then stated that he resided with the girlfriend at 546 North 4th Street, Allentown.

Agent Dimaria and Agent Sube went to 546 North 4th Street, Allentown and maintained surveillance of the residence from their vehicle. They observed . . . a middle aged woman, exit the residence to the porch area. . . . Shortly thereafter, an individual approached from the rear of their vehicle and ran onto the porch and handed a cell phone to the middle aged woman. At that time, Agent Dimaria and Agent Sube exited their vehicle and quickly approached the residence. Based on their observations, they were concerned that word had gotten out about the impending search and that evidence could be destroyed.

Agent Dimaria approached the middle aged woman and presented her with a photograph of [Robinson.] The woman stated that the person in the photograph was her daughter's boyfriend, and that he stays there on occasion with her daughter in the middle upstairs bedroom. . . . Agent Dimaria asked if she could go inside the residence and search the middle upstairs bedroom that the woman had identified as [Robinson's] and her daughter's. The girlfriend's mother agreed and directed them upstairs to the bedroom that they utilized.

Agent Dimaria and Agent Sube entered the residence and went to the second floor middle bedroom. Agent Sube lifted the mattress off the box spring which revealed a rolled up pair of light gray men's sweatpants. Agent Dimaria picked up the sweatpants, and contained therein was a Dan Wesson Arms .357 Magnum handgun. Agent Dimaria proceeded to unload the firearm and make the gun safe until she could furnish it to the Allentown Police Department upon their arrival. Further search of the bedroom revealed a small amount of marijuana in a baggie in a cup by the television, [Robinson's] identification card, male clothing and shoes, and a piece of mail with [Robinson's] name on it but an address different than 546 North 4th Street, Allentown.

Trial Ct. Motion Op., filed 1/28/19, at ¶¶ 1, 2, 5, 6, 8, 9, 10, 11, 12, 13, 14 (footnote-omitted).

Robinson waived his right to counsel and proceeded *pro se* with a bench trial. **See** N.T., Trial, 5/20/19, at 5. During trial, he objected on the basis of relevance to the admission of the GPS tracking information. **Id.** at 35. He noted that the witness had testified during the suppression hearing that "it could be inaccurate." **Id.** The trial court overruled the objection, stating that "if the GPS has you at the address where the gun was found, then that would be relevant." **Id.** at 36. The trial court found Robinson guilty of the firearms

charge and sentenced him to a term of 5 to 10 years' incarceration. This timely appeal followed.

Robinson asks us to review the following issues:

> I. Did the trial court err by not suppressing a gun found by state parole agents after they illegally entered and searched 546 N. 4th Street in violation of Mr. Robinson's rights under the Fourth and Fourteenth Amendments of the United States Constitution and/or Article I, Section 8 of the Pennsylvania Constitution?
>
> II. Did the trial court err by not suppressing Mr. Robinson's statements made to state parole agents after he was initially taken into custody in violation of rights under the Fifth and Fourteenth Amendments of the United States Constitution and/or Article I, Section 9 of the Pennsylvania Constitution?
>
> III. Did the trial court err by admitting inaccurate, unreliable, and therefore, irrelevant GPS location data at trial which the Commonwealth used to establish Mr. Robinson's connection to 546 N. 4th Street?
>
> IV. Was the evidence at trial insufficient to prove, beyond a reasonable doubt, that Mr. Robinson constructively possessed a firearm hidden underneath a mattress in an unsecured bedroom to which anyone residing in or visiting the residence had access at any time prior to the search merely because three of his documents were in the room?

Robinson's Br. at 4 (footnote omitted).

Our standard of review of the denial of a motion to suppress "is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Jones**, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted). Where the Commonwealth prevailed before the

suppression court, "we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Id.* (citation omitted). We are bound by the factual findings of the trial court where they are supported by the record, but we are not bound by the legal conclusions. *See id.*

"[P]arolees agree to 'endure warrantless searches' based only on reasonable suspicion in exchange for their early release from prison." ***Commonwealth v. Curry***, 900 A.2d 390, 394 (Pa.Super. 2006) (quoting ***Commonwealth v. Appleby***, 856 A.2d 191, 195 (Pa.Super. 2004)). "[Parole] agents need not have probable cause to search a parolee or his property; instead, reasonable suspicion is sufficient to authorize a search." *Id.* A search will be deemed reasonable "if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty." ***Commonwealth v. Gould***, 187 A.3d 927, 935 (Pa.Super. 2018) (citation omitted).

Pursuant to 61 Pa.C.S.A. § 6153(d)(6), the following factors may be considered in determining whether reasonable suspicion exists when a parole officer searches a parolee's residence:

> (i) The observations of agents.
>
> (ii) Information provided by others.
>
> (iii) The activities of the offender.
>
> (iv) Information provided by the offender.

(v) The experience of the agents with the offender.

(vi) The experience of agents in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S.A. § 6153(d)(6). "Parole officers may likewise form reasonable suspicion that a parolee is staying at a location other than their approved residence based on personal observations and third-party information." *Gould*, 187 A.3d at 936.

Robinson alleges that "[t]he trial court's conclusions about reasonable suspicion fail to address the nexus or reasonable relationship between any of Mr. Robinson's behaviors and the search of 546 N. 4th Street." Robinson's Br. at 33-34. He maintains that his "failure to provide employment verification many have been a violation, but it bore no relationship to 546 N. 4th Street." *Id.* 31. He adds that "the purported drug use and possession of a syringe" had no connection to the Fourth Street address, and "Agent Compano's belief that Mr. Robinson was 'probably selling drugs' was pure speculation." *Id.* at 31, 32.

Here, the trial court concluded that "the evidence seized as a result of the search of [Robinson's] residence - need not be suppressed." Trial Ct. Motion Op. at 21.

> The record is replete with evidence that [Robinson] was involved in criminal activity and violating his parole, including, but not limited to, [Robinson's] positive urine

screens, [Robinson's] syringe located in the vehicle of [Robinson's] girlfriend, the large amount of cash found on [Robinson's] person despite having no verifiable employment, [Robinson's] whereabouts unknown and his lying about the location of his residence, and the GPS monitor placing his whereabouts all over the City of Allentown at all hours of the day.

*Id.* We agree.

The evidence established that Robinson had violated the conditions of his parole by failing to work; "not giving me any firm address"; and "[t]here have been address changes without my permission." N.T., Motions Hearing, at 21. On one occasion, in July 2018, Agent Compano visited Robinson's approved address and residents told him that "he no longer lives there. He hadn't lived there for a month." *Id.* at 9, 14. Additionally, Agent Compano testified that Robinson's urine tests came back positive for drugs on two separate occasions. *Id.* at 9, 15. Furthermore, Robinson admitted that he was residing at the Fourth Street residence. *Id.* at 24. This evidence collectively established that the parole agents had reasonable suspicion to search the Fourth Street residence. *Gould*, 187 A.3d at 935, 936.

Next, Robinson claims "[t]he trial court erred by not suppressing Mr. Robinson's statements made to state parole agents after he was taken into custody at the parole office and before the search" of the Fourth Street house. Robinson's Br. at 34. He argues that the court should have suppressed his

statement to Agent Compano about where he resided because he was not read his **Miranda**[3] rights. **See id.** at 36.

"Parolees, like any other individual, must be given **Miranda** warnings when subject to custodial interrogation." **Commonwealth v. Cooley**, 118 A.3d 370, 376 (Pa. 2015). Custodial interrogation occurs when law enforcement officers either question a person or conduct themselves in a way that they should reasonably anticipate will elicit an incriminating response, after they have taken the person into custody or otherwise deprived the person of freedom of action in any significant way. **Id.**

Robinson appears to have been subject to custodial interrogation when he gave Agent Compano the Fourth Street address, as he was in "belt and shackles" at the time. N.T., Motions Hearing, at 23. However, pages 76-100 of the pretrial motions hearing are missing from the certified record and the missing portion appears to be where the parties argued the **Miranda** issue. Without that part of the transcript, we cannot tell whether Robinson raised a **Miranda** claim at all, or if he did, the arguments he made, as the **Miranda** claim was not in the written motion to suppress. Having failed to provide this Court with a complete record, Robinson has waived this issue.

Moreover, even if Robinson had preserved this claim, any error was at most harmless. There was plenty of evidence that Robinson was living at the Fourth Street address other than Robinson's **un-Mirandized** statement. Such

_____

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

- 10 -

evidence included the statement of Robinson's girlfriend that Robinson lived at that address, her mother telling agents on the scene that Robinson resided there, statements from those at Robinson's approved residence that he no longer lived there, and the GPS tracking information linking him to the Fourth Street address.

Next, Robinson challenges the trial court's decision to admit the GPS tracking information. He argues that it was erroneous for the court to allow this admission of this evidence because "the data had limitations on the accuracy of its listed locations; thus permitting the fact finder to speculate about Mr. Robinson's location." Robinson's Br. at 38.

The admission of evidence is left to the discretion of the trial court. **See Commonwealth v. Belknap**, 105 A.3d 7, 9-10 (Pa.Super. 2014). Thus, absent an abuse of discretion, we will not disturb an evidentiary ruling. **Id.** at 10. An abuse of discretion occurs when there is an "overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Id.** (citation omitted).

"Relevance is the threshold for admissibility of evidence." **Commonwealth v. Tyson**, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*) (citation omitted). "Evidence is relevant if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact." **Commonwealth v. Kennedy**, 959 A.2d 916, 923 (Pa. 2008). Evidence that is logically relevant

is subject to exclusion if its probative value is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Pa.R.E. 403.

Here, when the trial court overruled Robinson's objection to the admission of the GPS tracking information, it found that the evidence was logically relevant because the GPS information placed Robinson at the residence where the gun was found. It thus made it more probable than not that he in fact resided at the Fourth Street residence. Furthermore, Robinson's objection went to the weight and not the admissibility of the evidence. Robinson did not proffer any evidence or otherwise attempt to support his bare argument that the GPS evidence was unreliable. He instead relied on pure argumentation, which rendered the issue one of weight and not admissibility. The trial court did not abuse its discretion in admitting this evidence.

Robinson's final claim is that the evidence was insufficient to show that he had constructive possession of the gun. He argues that "one photo ID, an Access card, and one piece of mail with an old address on a dusty TV stand in the room is not evidence that Mr. Robinson ever stayed in that room or that he was the one who put those items there." Robinson's Br. at 44.

Our standard of review for a sufficiency claim is to view the evidence in the light most favorable to the Commonwealth as verdict winner with all reasonable inferences drawn in its favor. *See Commonwealth v. Miklos*, 159 A.3d 962, 967 (Pa.Super. 2017). Evidence is sufficient where "it

establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." ***Id.*** (quoting ***Commonwealth v. Lynch***, 72 A.3d 706, 708 (Pa.Super. 2013)).

To sustain a verdict for Persons not to Possess, Use, Manufacture, Control, Sell, or Transfer Firearms, the Commonwealth had to prove beyond a reasonable doubt that Robinson "possessed a firearm and that he was convicted of an enumerated offense that prohibits him from possessing, using, controlling, or transferring a firearm." ***Commonwealth v. Thomas***, 988 A.2d 669, 670 (Pa.Super. 2009); 18 Pa.C.S.A. § 6105(a).

"Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction." ***Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa.Super. 2018), *appeal denied*, 202 A.3d 42 (Pa. 2019). To prove constructive possession, the Commonwealth must show that the defendant had "'power to control the contraband and the intent to exercise that control.'" ***Id.*** (citation omitted). The Commonwealth may establish constructive possession by presenting a totality of circumstances that prove the requisite power and intent to control. ***Id.*** Furthermore, constructive possession "may be proven by circumstantial evidence." ***Id.*** at 36-37 (citation omitted).

Here, the trial court found that the Commonwealth sufficiently proved constructive possession beyond a reasonable doubt. It reviewed the evidence and concluded that the totality of the circumstances supported a finding that Robinson constructively possessed the firearm found in the bedroom.

Evidence that the court credited included the statement from the mother of Robinson's girlfriend that Robinson lived in the bedroom where the agents found the gun; the agents finding the gun inside men's sweatpants; and the agents' discovery of numerous personal items belonging to Robinson in the room, such as Robinson's employment identification card, a card addressed to "King La'cione," a Department of Public Welfare "Access" card with Robinson's name on it, and mail bearing Robinson's name. **See** 1925(a) Op., filed 8/15/19, at 16-17. Furthermore, the court pointed out that as police were driving him to police headquarters, Robinson spontaneously said, "I am not mad about this. You got me; you got me good." **Id.** at 17. The evidence was sufficient to prove Robinson's constructive possession of the gun. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 9/16/2020*

- 14 -