**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Thomas Elliott APPLEBY, Appellant.**

Superior Court of Pennsylvania.

Argued June 22, 2004.
Filed Aug. 19, 2004.

Steven E. Burlein, Honesdale, for appellant.

Michael P. Lehutsky, Asst. Dist. Atty., Honesdale, and Matthew Meagher, Asst. Dist. Atty., Honesdale, for Com., appellee.

BEFORE: HUDOCK, ORIE MELVIN and MONTEMURO *, JJ.

OPINION BY HUDOCK, J.:

¶ 1 This appeal is from a judgment of sentence imposed on Appellant after a jury convicted him of persons not to possess, use, manufacture, control, sell or transfer firearms.[1] He was sentenced to no less than twenty-one months and no more than sixty months of incarceration. Appellant filed timely post-trial motions and complied with Rule 1925; this appeal followed. We affirm.

* Retired Justice assigned to the Superior Court.

1. 18 Pa.C.S.A. § 6105.

¶ 2 Appellant served time for an aggravated assault with a deadly weapon[2] conviction from March 6, 2002, to January 28, 2003; he was then released from Wayne County Prison on parole. Two weeks later on February 11, 2003, Officers of the Wayne County Probation and Parole Department, acting on an informant's tip, searched Appellant's residence and found a Rossi .38 Special Handgun in a bedroom closet. Police promptly arrested Appellant.

¶ 3 Appellant alleges four errors by the trial court for our review. The first three were raised in his omnibus pretrial motion; the fourth, at trial by objection. They include denial of Appellant's motion to quash the information, motion to suppress evidence of the handgun, and motion for a continuance; and allowing the Commonwealth to question Appellant at trial about material from a psychiatric evaluation he requested before his sentencing for the aggravated assault conviction.

¶ 4 Appellant admits that a weapon was found in his residence. He concedes that the jury determined his ownership of the weapon. Nonetheless, he argues that the information against him should have been quashed because he was not afforded the sixty day grace period allowed by 18 Pa. C.S.A. section 6105 for convicted persons to dispose of weapons. The aggravated assault conviction of July 25, 2002, rendered Appellant ineligible to possess a firearm. 18 Pa.C.S.A. § 6105(b). He was incarcerated for that crime from the date of his arrest on March 6, 2002, until his parole release on January 28, 2003, six months after the conviction. Appellant claims "he could not have possibly disposed of the firearm in question while incarcerated, and that the sixty (60) day

2. 18 Pa.C.S.A. § 2702(a)(4).

period must run from the date of his release." Appellant's Brief at 7. We disagree.

¶ 5 Section 6105, 18 Pa.C.S.A., reads as follows:

**(a) Offense defined.-**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

(2) A person who is prohibited from possessing, using, controlling, selling, transferring or manufacturing a firearm under paragraph (1) or subsection (b) or (c) shall have a reasonable period of time, not to exceed 60 days from the date of the imposition of the disability under this subsection, in which to sell or transfer that person's firearms to another eligible person who is not a member of the prohibited person's household.

(b) **Enumerated offenses.**—The following offenses shall apply to subsection (a):

\* \* \*

Section 2702 (relating to aggravated assault).

¶ 6 As the Commonwealth points out, the question before this Court is when does "the date of the imposition of the disability" occur, so as to begin the 60 day grace period? This appears to be an issue of first impression, given the lack of precedent on the definition of "imposition of the disability." We agree with the trial court's treatment of the issue in its Opinion in Support of Order denying Appellant's omnibus pretrial motion, August 28, 2003:[3]

> Although [Appellant] would like this Court to define the time of "imposition of this [sic] disability" as the time that the [Appellant] was released from prison, Commonwealth correctly points to *Commonwealth v. Cozzone*, 406 Pa.Super. 42, 593 A.2d 860 (1991), wherein the Superior Court explained that " 'A prior conviction means "previously convicted" as defined in 42 Pa.C.S.A. § 2154(a)' 204 Pa.Code § 303.7(g). There the legislature defined 'previously convicted' to include 'any finding of guilt .... Whether or not sentence has been imposed ... prior to the commission of the current offense'." [sic] This Court must conclude that "imposition of the disability" must commence at the time of conviction. As Defendant does not dispute possession of the firearms within 60 days of conviction, his argument must fail.

Trial Court Opinion, 10/28/03, at 2. Under section 6501, **conviction** of an enumerated offense (including aggravated assault) imposes upon a defendant the disability to possess, use, control, sell, transfer or manufacture a firearm—not a guilty plea, not sentencing, not release from prison, but conviction. While the Supreme Court of Pennsylvania has examined the term "convicted" in various cases, *see, Com. ex. rel. McClenachan v. Reading*, 336 Pa. 165, 169, 6 A.2d 776, 778 (1939) ("['C]onvicted' can mean only a final judgment of sentence and not merely a verdict of guilty rendered by a jury... In interpreting a stat-

---

3. Unfortunately, the trial court's Rule 1925 Opinion is not as thorough in its discussion as his Opinion in Support of Order denying Appellant's omnibus pretrial motion. Hence, we rely on the latter.

ute using the word 'conviction' the court has held that the strict legal meaning must be applied except where the intention of the legislature is obviously to the contrary.") and *Commonwealth v. Travaglia*, 502 Pa. 474, 497–98, 467 A.2d 288, 299 (1983), *cert. denied*, 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984) ("By including offenses committed contemporaneously with the offense in issue, the legislature clearly indicated its intention that the term 'convicted' not require final imposition of sentence, but cover determinations of guilt as well."), we find no case defining "convicted" as including release from prison. Appellant's request for such a definition is unsupportable.

■■■ ¶ 7 The rationale for the statutory prohibition of 18 Pa.C.S.A. section 6105 is to protect the public from convicted criminals who possess firearms, *Commonwealth v. Gillespie*, 573 Pa. 100, 821 A.2d 1221 (2003), whether the convict is out of prison or still serving time. As the Commonwealth pointed out, even a prisoner can exercise control over the use of a firearm by another person for illegal purposes. Appellee's Brief at 4.[4] The purpose of the grace period is to give a defendant time in which to dispose of any firearms in his possession or under his control, thereby avoiding a violation of 18 Pa.C.S.A. section 6105 and protecting the public from a firearm in the possession or under the control of a convicted criminal. Although Appellant was incarcerated during the sixty day grace period, he was not without resources to assist him in selling or transferring his firearm. He was able to communicate, correspond, and transact business with the outside world while in prison. The Wayne County Parole and Probation Department, friends or a family member not of his residence, or defense counsel, were all available to dispose of Appellant's gun on his behalf. He needed only to call upon them for assistance. This he did not do.

¶ 8 Contrary to Appellant's suggestion, any other interpretation of the statutory grace period would not be sensible; in fact, it would give a convicted criminal immediate access to a firearm upon release from prison, as in the instant case. This is clearly contrary to the Legislature's intent.

■■ ¶ 9 Appellant next argues that the trial court should have suppressed the handgun evidence because it was retrieved during a search of his residence that was illegal under the Fourth and Fourteenth Amendments to the U.S. Constitution and Article 1 Section 8 of the Pennsylvania Constitution.[5] Parolees, like Appellant, must endure warrantless searches. *Commonwealth v. Edwards*, 400 Pa.Super. 197, 583 A.2d 445 (1990) (holding parolees must endure warrantless searches based upon reasonable suspicion that they have committed parole violations); *Smith v. Com., Pennsylvania Bd. of Probation and Parole*, 131 Pa.Cmwlth. 360, 570 A.2d 597 (1990) (holding parole agent had authority to arrest parolee without warrant for technical parole violations). Appellant consented to such searches when he agreed to the conditions of his parole release. While Appellant may not have liked his choices, he nonetheless had a choice; he chose to be released. Although his choice may have been unpleasant, we are not persuaded that it was involuntary and agree with

4. Counsel for the Commonwealth should include page numbers in its brief for ease of reference by the Court.

5. Appellant has relied solely upon Pennsylvania case law in his brief. Therefore, we have not addressed Appellant's federal and state constitutional claims separately. *See, Commonwealth v. Altadonna*, 817 A.2d 1145, 1148 n. 1 (Pa.Super.2003).

the trial court that there was no constitutional violation. *Commonwealth v. Moore*, 805 A.2d 616, 620 (Pa.Super.2002) (holding probationer has limited constitutional rights because of a diminished expectation of privacy).

¶ 10 The conduct of warrantless searches of property by county parole officers is governed by 61 P.S. section 331.27b(d)(2), which states: "A property search may be conducted by any officer if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." In determining the existence of reasonable suspicion, county parole officers may take into account the following factors: (1) the observation of the officers; (2) information provided by others; (3) the activities of the offender; (4) information provided by the offender; (5) the experience of the officers with the offender; (6) the experience of officers in similar circumstances; (7) the prior criminal and supervisory history of the offender; (8) the need to verify compliance with the conditions of supervision. *Id.* at 331.27b(d)(6)(i-vii). A violation of section 331.27b does not constitute an independent ground for suppression of evidence in a criminal proceeding. *Id.* at 331.27b(c).

¶ 11 The information in this case depended on information provided by another. In Appellant's omnibus pretrial motion and Rule 1925 statement, he sought suppression of the handgun evidence because it was gathered through "an anonymous tip." The trial court found there

was no anonymous tip and the search was within the authority of the Wayne County Probation/Parole Department and not in violation of the Fourth Amendment.[6] On appeal, Appellant has dropped the anonymity aspect of his claim, identifying the informant by name—Michelle Shauptah (Shauptah). Appellant's Brief at 13. The Commonwealth offered the following testimony concerning Shauptah's information. She telephoned Probation Officer Brewington on Tuesday, February 10, 2003, and told him that she had lived in Appellant's residence while he was in prison and that Appellant had tried to take her daughter out of school that day at lunchtime without permission. N.T., 7/29/03, at 24. Shauptah called Mr. Brewington again on February 11, 2003, concerned "that she might have withheld pertinent information." N.T., 7/29/03, at 25. She explained that she had visited Appellant at his residence on the weekend to help him go grocery shopping and that he showed her a silver handgun he was keeping "in the closet in the spare bedroom with the tanning bed, hanging in the closet in the pocket of a red sweatshirt-type garment." N.T., 7/29/03, at 26. Upon producing the weapon, Appellant said to Shauptah, "See, they didn't find them all." N.T., 7/29/03, at 26.

¶ 12 Appellant challenges the reliability of this informant because the probation officers did not interview her, offered no evidence of a prior relationship with her, and did not gather other information for purposes of verification. Appellant's Brief at 13. Moreover, Appellant hints that Shauptah's motive in providing the information may have been vindictive: "Appellant had lived with the informant, and . . .

---

**6.** In denying Appellant's omnibus pretrial motion, the trial court quoted extensively from *Commonwealth v. Altadonna, supra,* before [its] single sentence conclusion within [its] [o]pinion, 10/28/03, at 6–7. In [its] [op]inion, the trial court relied on

the statutory language of 61 Pa.C.S.A. section 331.27b before concluding that there was no anonymous tip and that the search was within the authority of the Wayne County Probation/Parole Department. Opinion, 1/08/04, at 6–7.

had ended their relationship the day before she contacted his Probation Officer about the gun." *Id.*

In an appeal from the denial of a motion to suppress, our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the evidence supports the factual findings of the suppression court, we may reverse only if there is an error in the legal conclusions drawn from those factual findings. As a reviewing court, we are therefore not bound by the legal conclusions of the suppression court and must reverse that court's determination if the conclusions are in error or the law is misapplied. *Commonwealth v. Ayala*, 791 A.2d 1202, 1207 (Pa.Super.2002). In the instant case, the informant contacted Mr. Brewington first with a concern about Appellant's conduct toward her daughter. She had lived in Appellant's residence. She contacted Mr. Brewington a second time concerned about not having told him pertinent information about Appellant. Appellant showed her the gun in question just days before her phone calls. She knew exactly where it was located and directed authorities to it. As to Shauptah's motivation, it could have been concern for her safety and that of her daughter or spite. In either case, we conclude that the tip was neither anonymous nor unreliable.

¶ 13 Because the trial court did not, we reviewed the record in light of the remaining factors set forth in 61 Pa.C.S.A. section 331.27b(d)(6) to determine if the parole/probation officers' search was legal.

First, observation of the agents: Mr. Brewington found a BB-gun in Appellant's residence several days before his release from prison. Second, information provided by others: *See* discussion *supra.* Third, activities of the offender: A neighbor telephoned the probation department after Appellant's release, saying Appellant was making threatening remarks; likewise, Shauptah called the probation office saying that Appellant had tried to take her daughter out of school at lunchtime without permission. Fourth, information provided by the offender: During his first parole interview, Appellant expressed an intention to commit suicide. He also said he understood that if caught with a firearm in his possession there would be big trouble. Fifth and sixth, experience of agents with the offender and in similar circumstances: See previous four items. Seven, prior criminal and supervisory history of the offender: The Appellant had been convicted of aggravated assault with a deadly weapon; that weapon had not been recovered by authorities. Eight, need to verify compliance with the conditions of supervision: Mr. Brewington went to his supervisors who gave authorization to search Appellant's *residence with police* backup given the nature of Appellant's aggravated assault offense and that the search was for a weapon. 61 Pa.C.S.A. § 331.27b(d)(3) (prior approval of a supervisor shall be obtained for a property search absent exigent circumstances).

¶ 14 Having considered only the evidence of the prosecution's witnesses and so much of the defense as remained uncontradicted in the context of the record as a whole, we conclude that the trial court's legal conclusions and application of the law to Appellant's suppression motion were correct.

¶ 15 Appellant's third argument is that the trial court erred in denying a

continuance as requested in his omnibus pretrial motion pursuant to Pa.R.Crim.P. 578. Appellant had been a patient in Norristown State Hospital for approximately three (3) months before the July trial date. Appellant claims that counsel did not have access to him or his medical records during those three months and so would be inadequately prepared for trial. In the Commonwealth's counter-statement of questions presented, it agrees with Appellant on this issue. (It did not contest Appellant's pretrial motion for a continuance.) However, in its brief, the Commonwealth makes a minimal argument that Appellant's "attorney had access to [him] while he was at Norristown State Hospital and [he] could have released his records to his attorney. The Commonwealth did not have the records." Appellee's Brief at 6. Without stating why, the trial court "did not find the [Appellant's] reasoning adequate to grant the continuance." Opinion, 1/8/04, at 3. Continuances in criminal court cases are governed by Pa.R.Crim.P. 106(C), which states: "A motion for continuance on behalf of the defendant shall be made not later than 48 hours before the time set for the trial. A later motion shall *be entertained only when the opportunity* therefore did not previously exist, or the defendant was not aware of the grounds for the motion, or the interests of justice require it." Granting or denying a motion for continuance is within the discretion of the trial court; only where denial of the request is arbitrary will it be held to be a violation of due process. *Commonwealth v. Harding*, 245 Pa.Super. 333, 369 A.2d 429 (1976). The motion for continuance was timely in this case, having been filed July 10, 2003, or eleven days before the trial date of July 21, 2003. We cannot say if the denial of the request was arbitrary, because Appellant offers no explanation as to why counsel could not access him or his records at Norristown State Hospital. In

fact, Appellant's claim is sufficiently undeveloped that we decline to address it. *See Commonwealth v. Hallock*, 722 A.2d 180, 181 (Pa.Super.1998) ("When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof.")

¶ 16 Appellant's final challenge was raised by objection at trial and concerns the use of his confidential psychiatric evaluation material. The Commonwealth's examination of Appellant went as follows:

Q  Do you remember being examined by Dr. Gail Beldia, the psychiatrist?

A Yes.

Q  Back—this was back at the time of the aggravated assault, correct?

A I believe so.

Q  And at that time, did you not tell him -

MR. BURLEIN: Objection, Your Honor, as to the use of psychiatric evidence without a doctor.

THE COURT: Overruled.

Q  Did you not tell [her] that you were experiencing no relief from your pain medication?

\* \* \* \*

A No, I don't believe I did.

Q  You did -

A She's my psychiatrist, not my pain doctor.

Q  Did you tell her that your tried to shoot yourself in order to, quote, stop the pain, unquote?

A I might have told her that.

N.T., 7/21/03, at 59. Before this examination, Appellant had already testified on direct examination as to suicidal thoughts. N.T., 7/21/03, at 52. In challenging the quoted testimony, Appellant relies on the

statutory protection afforded psychiatrist/client communications:

> No psychiatrist or person who has been licensed ... to practice psychology shall be without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as provided or prescribed by law between an attorney and client.

42 Pa.C.S.A. § 5944. This statutory privilege is intended to inspire confidence in the client and encourage full disclosure to the psychiatrist. *Commonwealth v. Fewell,* 439 Pa.Super. 541, 654 A.2d 1109 (1995).

¶ 17 The Commonwealth argues "that by taking the stand and answering questions in the trial phase, the [Appellant] waived any privilege he may have had. Further, the [Appellant] attempts to use the statute that protects disclosure by the doctor or medical professional. In the instant matter, it is the [Appellant] or client who disclosed the information on cross-examination." Appellee's Brief at 6. As the trial court correctly points out, "[t]he psychiatric evaluation itself was not presented, rather the [Appellant] was questioned on statements that he had made to the psychiatrist." Opinion, 1/8/04, at 3. We agree, but add a clarification. The statutory language clearly prohibits disclosure by the psychiatrist during a civil or criminal matter without the client's written consent. While at trial Appellant himself disclosed his own statements to the psychiatrist, he cannot be said to have waived the protection against his psychiatrist revealing confidential communications. *Fewell, supra,* 439 Pa.Super. 541, 654 A.2d 1109 (holding fact that Appellant

later revealed to trooper same information she told psychiatrist does not imply she waived her statutory right to prevent psychiatrist from revealing her confidential communications). Because the psychiatrist who treated Appellant did not testify at trial, the trial court did not err in allowing Appellant's testimony as to his confidential communications.

¶ 18 Judgment of sentence affirmed.