J-A24042-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TREY ANTHONY BANKS | : | |
| | : | |
| Appellant | : | No. 495 WDA 2019 |

Appeal from the Judgment of Sentence Entered February 25, 2019
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000507-2018

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED FEBRUARY 10, 2021**

Trey Anthony Banks ("Banks") appeals from the judgment of sentence entered following his conviction of two counts of possession of a controlled substance.[1] We affirm in part, vacate in part, and remand for resentencing.

Banks, an individual who was on parole, was under the supervision of Agent Christopher Bellotti ("Agent Bellotti") of the Pennsylvania Board of Probation and Parole ("PBPP"). On October 11, 2017, Kelly Gibbs ("Gibbs"), Banks's cousin and home plan provider for his parole, informed Agent Bellotti and other PBPP agents that Banks was selling cocaine and other narcotics out of his residence at 7704 Bennett Street, in the Homewood neighborhood of Pittsburgh; Banks kept firearms in his residence; and there were known gang members going in and out of the residence. Based on this information, as

---

[1] 35 P.S. § 780-113(a)(16).

well as other parole violations observed by Agent Bellotti when he visited Banks's residence on prior occasions, Agent Bellotti and his supervisor decided to search the residence and interview Banks.

On the morning of October 17, 2017, Agent Bellotti, accompanied by other PBPP agents and Pittsburgh Bureau of Police officers, knocked on the front door of Banks's residence. Banks did not answer. Agent Bellotti confirmed that Banks was in the residence, based upon confirmation with the company that monitors Banks's GPS tracker. After several additional attempts to contact Banks, and requests for anyone present in the residence to come out, agents entered through an unsecured door in the rear of the residence. Agents discovered that the door was barricaded with furniture. Once agents had entered the residence, Banks confirmed that he was upstairs, and was taken into custody. A subsequent search of the residence yielded suspected cocaine, crack cocaine, morphine tablets, and four scales. Banks was arrested and charged with the above-referenced offenses, plus one additional count of possession of cocaine with the intent to deliver, and one count of possession of drug paraphernalia.

On August 3, 2018, Banks filed a Motion to suppress, wherein he alleged that the warrantless search of his residence was illegal, and that the evidence seized from the search should be suppressed. At the suppression hearing, Agent Bellotti testified as to the circumstances underlying the search of

Banks's residence. On November 7, 2018, the trial court entered an Order denying Banks's Motion to suppress.

On December 20, 2018, Banks filed a Motion to dismiss pursuant to Pa.R.Crim.P. 600. On January 7, 2019, the trial court denied Banks's Motion without a hearing. Following a non-jury trial on February 25, 2019, the trial court convicted Banks of the two possession counts, and found Banks not guilty of the remaining counts. The trial court sentenced Banks to serve two concurrent terms of nine to eighteen months in prison, with credit for time served, followed by two years of probation. Banks filed a post-sentence Motion, which the trial court denied. Banks filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Banks raises the following issues for our review:

I. Did the trial court err in denying the suppression Motion, as parole agents did not have a reasonable suspicion that the house contained contraband or that [] Banks violated the conditions of his supervision?

II. Did the trial court err in summarily denying the [] Motion to dismiss pursuant to Rule 600 without a hearing, and when the Commonwealth failed to exercise due dilligence [*sic*] in bringing the case to trial?

III. Did the trial court impose illegal sentences at counts [two] and [three,] because the sentence at each count exceeded the statutory maximum?

Brief for Appellant at 6 (capitalization omitted).

First, Banks argues that the trial court erred in denying his Motion to suppress the evidence seized from his residence. *Id.* at 16. Banks asserts that Agent Bellotti lacked reasonable suspicion that Banks's residence contained contraband or other evidence that Banks had violated the terms of his parole. *Id.* Banks claims that the search of his residence was not a routine parole check, but was instead an "impermissible fishing expedition where parole agents worked with multiple police officers to create and carry out a planned search of a property for evidence of a crime." *Id.* at 19. Further, Banks points to the factors listed in 42 Pa.C.S.A. § 9912(d), and argues that Agent Bellotti lacked reasonable suspicion to conduct a search of his residence. Brief for Appellant at 25-32.

We adhere to the following standard of review:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation, brackets, and ellipses omitted).

"[P]arolees agree to 'endure warrantless searches' based only on reasonable suspicion in exchange for their early release from prison." *Commonwealth v. Curry*, 900 A.2d 390, 394 (Pa. Super. 2006) (quoting *Commonwealth v. Appleby*, 856 A.2d 191, 195 (Pa. Super. 2004)). "[Parole] agents need not have probable cause to search a parolee or his property; instead, reasonable suspicion is sufficient to authorize a search." *Id.* A search will be deemed reasonable "if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty." *Commonwealth v. Gould*, 187 A.3d 927, 935 (Pa. Super. 2018) (citation omitted). Additionally, in order to establish reasonable suspicion, a parole agent need not personally observe the appellant engage in illegal activity or suspicious conduct. *Commonwealth v. Altadonna*, 817 A.2d 1145, 1152 (Pa. Super. 2003). "[Parole agents] may rely upon information from third parties in order to form reasonable suspicion." *Id.*; *see also* 42 Pa.C.S.A. § 6153(d)(6)(ii).

Pursuant to 61 Pa.C.S.A. § 6153(d)(6),[2] the following factors may be considered in determining whether reasonable suspicion exists for a parole officer to search a parolee's residence:

(i) The observations of agents.

(ii) Information provided by others.

(iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of the agents with the offender.

(vi) The experience of agents in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S.A. § 6153(d)(6).

At the hearing, the Commonwealth presented testimony that the agents had received information from a known source, Gibbs, that Banks, who was on parole, was selling narcotics out of the residence, had firearms in the residence, and that known gang members were going in and out of the residence. N.T., 10/22/18, at 6. Agent Bellotti, who had supervised Banks's parole for several months prior to receiving the information from Gibbs,

---

[2] We note that Banks and the Commonwealth both reference the provisions in section 9912 when referencing Agent Bellotti's warrantless search of Banks's residence. However, section 9912 governs warrantless searches of individuals under the supervision of *county* probation agents, while, section 6153 governs warrantless searches of individuals under the supervision of state parole agents. *See* 61 Pa.C.S.A. § 6153. Nevertheless, the statutes contain substantially similar provisions with regard to the issues raised herein.

testified that Banks had violated his parole on other occasions, including positive urinalyses for cocaine, one of the narcotics allegedly being sold out of Banks's residence. *Id.* at 6-7. Because of Banks's previous violations, he was required to wear a GPS ankle monitor. *Id.* at 7. Further, Agent Bellotti testified that he had observed, on prior visits to Banks's residence, open bottles of alcohol, individuals coming and going at odd hours, and the smell of marijuana. *Id.* at 22-23. Finally, Agent Bellotti testified that, after consulting with his supervisor, he made the decision to visit Banks's residence on October 17, 2017, to "try to clear the allegations that were made by [] Gibbs[,] search the residence, talk to [] Banks and … make a decision on where to go from there." *Id.* at 7-8. This evidence, collectively, established that Agent Bellotti had reasonable suspicion to search Banks's residence. *See Gould*, 187 A.3d at 935, 936; *see also Altadonna*, *supra*. Accordingly, we can grant Banks no relief on this claim.

In Banks's second issue, he argues that the trial court erred in dismissing his Rule 600 Motion without a hearing, as his trial began 480 days after he was charged—115 days after the 365-day period in Rule 600. Brief for Appellant at 33. Though Banks concedes that he was responsible for a delay of 61 days, he asserts that his trial nevertheless began after the expiration of his adjusted run date. *Id.* at 35-38. Banks also claims that the trial court's failure to hold a hearing on his Rule 600 Motion constituted an abuse of discretion, as a hearing was necessary for the Commonwealth to

provide an explanation as to why it had failed to bring Banks to trial in a timely fashion. *Id.* at 38-41. Finally, Banks argues that even if the trial court had held a hearing on his Rule 600 Motion, the hearing would have demonstrated that the Commonwealth had failed to exercise due diligence in bringing Banks to trial in compliance with Rule 600. *Id.* at 41-47.

"In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." *Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa. Super. 2004) (*en banc*).

> The proper scope of review … is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> > Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> * * *
>
> > So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.

*Id.* at 1238-39 (internal citations and quotation marks omitted).

Rule 600 provides, in pertinent part, as follows:

**(A) Commencement of Trial; Time for Trial**

\* \* \*

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

Pa.R.Crim.P. 600(A)(2)(a). "Rule 600 generally requires the Commonwealth to bring a defendant … to trial within 365 days of the date the complaint was filed." *Hunt*, 858 A.2d at 1240. To obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion for relief. *Id.* at 1243.

"The mechanical run date is the date by which the trial must commence under Rule 600." *Commonwealth v. McNear*, 852 A.2d 401, 406 (Pa. Super. 2004).

It is calculated by adding 365 days (the time for commencing trial under Rule 600) to the date on which the criminal complaint is filed. The mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

*Id.* In the context of Rule 600, "excludable time" is differentiated from "excusable delay" as follows:

"Excludable time" is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence; any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b)

any continuance granted at the request of the defendant or the defendant's attorney. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

*Hunt*, 858 A.2d at 1241 (internal citations and footnote omitted; emphasis added); *see also Commonwealth v. Burno*, 154 A.3d 764, 793-94 (Pa. 2017) (explaining that excusable delay is not calculated against the Commonwealth in a Rule 600 analysis, as long as the Commonwealth acted with due diligence at all relevant times).

In this case, Banks was arrested on October 13, 2017. Thus, the mechanical run date for Rule 600 purposes was October 13, 2018. Banks's trial commenced on February 5, 2019, 115 days beyond the mechanical run date. Banks's original trial date was set for August 6, 2018. On August 3, 2018, three days before Banks's trial was scheduled to begin, Banks filed his Motion to suppress. The trial court subsequently continued the proceedings to August 16, 2018. On August 16, 2018, the Commonwealth requested a continuance due to an unavailable witness, to which Banks consented, and the proceedings were continued to September 20, 2018. Accordingly, the 45-day span from August 6, 2018, to September 20, 2018, was excludable for the purposes of Rule 600. *See Hunt*, 858 A.2d at 1241 (stating that a defendant's consent to a Commonwealth request for a continuance is excludable).

On September 20, 2018, the Commonwealth again requested a continuance due to unavailability of witnesses, to which Banks objected. On

October 9, 2018, the trial court moved the proceedings to October 22, 2018, as Banks was not available after being returned to prison and not having been ordered to return. Banks's suppression hearing was held on October 22, 2018, and the trial court entered its Order denying his Motion to suppress on November 7, 2018; accordingly, the 29-day period from October 9, 2018, to November 7, 2018 is excludable. *See Commonwealth v. Anderson*, 959 A.2d 1248, 1249 (Pa. Super. 2008) (stating that a two-week continuance that was necessary because the defendant was not brought down for trial was not chargeable to the Commonwealth).

Adding the total of 74 days of excludable time to Banks's mechanical run date yields an adjusted run date of December 26, 2018. Banks filed his Rule 600 Motion on December 20, 2018. Therefore, Banks's Rule 600 Motion was premature, and we discern no abuse of discretion in the trial court's denial of Banks's Motion. *See Hunt*, 858 A.2d at 1243.

In Banks's final issue, he argues that the trial court imposed an illegal sentence regarding his two convictions for possession of a controlled substance. Brief for Appellant at 48-49. Specifically, Banks claims that because he had a prior conviction for possession of a controlled substance, his concurrent sentences of nine to eighteen months in prison, followed by two years of probation, were illegal. *Id.* at 48. Banks points to 35 P.S. § 780-113(b), which dictates that individuals with such prior convictions can only be issued a maximum sentence of three years. Brief for Appellant at 48.

Accordingly, Banks asserts that his sentence, which has a maximum prison term of three-and-a-half years, was illegal. *Id.* at 48-49.

"A claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence." ***Commonwealth v. Catt***, 994 A.2d 1158, 1160 (Pa. Super. 2010) (*en banc*). "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated." ***Id.*** (quoting ***Commonwealth v. Watson***, 945 A.2d 174, 178-79 (Pa. Super. 2008)). Likewise, a sentence that exceeds the statutory maximum is illegal. ***Commonwealth v. Bradley***, 834 A.2d 1127, 1131 (Pa. 2003).

"In imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, which term may not exceed the maximum term for which the defendant could be confined, and the authority that shall conduct the supervision." 42 Pa.C.S.A. § 9754(a).

The sentencing statute at issue in his case, 35 P.S. § 780-113, states as follows:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> * * *
>
> (16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the

> appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.
>
> * * *
>
> (b) Any person who violates [subsection (16)] shall be guilty of a misdemeanor, and … on conviction thereof, be sentenced to imprisonment not exceeding one year[;] but, if the violation is committed after a prior conviction of such person for a violation of this act under this section has become final, such person shall be sentenced to imprisonment not exceeding three years….

35 P.S. § 780-113(a)(16), (b).

In this case, the trial court convicted Banks of two counts of possession of a controlled substance at section 780-113(a)(16), and sentenced Banks to two identical, concurrent terms of nine to eighteen months in prison, followed by an additional two years of probation. N.T., 2/25/19, at 4-6 (wherein the trial court imposes its sentence). Accordingly, Banks's maximum possible sentence was three years and six months, which exceeds the statutory maximum sentence of three years.[3] **See** 42 Pa.C.S.A. § 9754(a). Accordingly, we vacate the judgment of sentence and remand for re-sentencing as to the length of Banks's probationary period. **See Catt**, **supra**.

---

[3] The parties are in agreement that Banks has a prior conviction under 35 P.S. § 780. **See** Brief for Appellant at 49; Commonwealth's Brief at 28. Further, the trial court, in its Opinion, agreed that, "although the period of incarceration of 9 to 18 months was within the three-year statutory maximum penalty, the consecutive period of two years [of] probation did result in a sentence beyond the statutory maximum." Trial Court Opinion, 11/25/19, at 15. The Commonwealth concedes the necessity of a remand. **See** Commonwealth's Brief at 28.

Judgment of sentence vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/10/2021