J-S04001-21

2021 PA Super 64

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KODY JAMES GETKIN | : | |
| | : | |
| Appellant | : | No. 1024 MDA 2020 |

Appeal from the Judgment of Sentence Entered May 13, 2020
In the Court of Common Pleas of Wyoming County Criminal Division at
No(s): CP-66-CR-0000388-2018

BEFORE: OLSON, J., STABILE, J., and MUSMANNO, J.

OPINION BY OLSON, J.:                                    **FILED APRIL 12, 2021**

Appellant, Kody James Getkin, appeals from the judgment of sentence entered on May 13, 2020, as made final by the trial court's denial of his post-sentence motion. For the reasons set forth below, we affirm Appellant's convictions but vacate his judgment of sentence to the extent it states he is subject to a firearms disqualification under Act 79.[1]

The affidavit of probable cause states that Appellant and the victim attended a mutual friend's house party on September 10, 2017.[2] Affidavit of

_____

[1] Act of October 12, 2018, P.L. 519, No.79. Adopted in 2018, Act 79 amended the Uniform Firearms Act ("UFA"), 18 Pa.C.S.A. § 6101 *et. seq.*, and the Protection from Abuse Act ("PFA"), 23 Pa.C.S.A. § 6101 *et. seq.* In relevant part, Act 79 expanded the scope of the UFA's firearms disqualification scheme by incorporating 18 U.S.C. § 922(g)(8), a federal firearms statute, which bars firearms ownership and possession by persons who commit misdemeanor crimes of violence against their "intimate partners."

[2] While the record does not confirm that Appellant and the victim were complete strangers, it demonstrates, at best, that they were mere

Probable Cause, 7/24/18. After a night of drinking alcohol, Appellant and the victim laid on a couch together. *Id.* According to the probable cause affidavit, Appellant "engaged in sexual intercourse with the victim by forcible compulsion, namely, by continuing to undress, grope and insert his penis into her vagina while she was resisting and saying no." Trial Court Opinion, 5/13/20, at 1.

On March 6, 2020, Appellant entered a negotiated plea of *nolo contendere* to charges of simple assault[3] (a misdemeanor of the second degree) and disorderly conduct[4] (a misdemeanor of the third degree). Both counts were docketed at CP-66-CR-0000388-2018. On May 13, 2020, the trial court sentenced Appellant to two days to 23 ½ months' incarceration with two days credit for time served and immediate parole for the balance of the term. Sentencing Order, 5/13/20, at 1.

As part of the sentence, the trial court ordered that Appellant "shall be subject to the requirements of Act 79 and shall not own, possess, or make application for any firearms, nor shall [he] be permitted to have [a] concealed carry permit." Sentencing Order, 5/13/20, at 2. At the sentencing hearing, prior to the imposition of sentence, defense counsel argued that Act 79 did not apply. *See* N.T. Sentencing Hearing, 5/13/20, at 6-8. The trial court

---

acquaintances whose sole interactions may have included prior parties given by a mutual friend.

[3] 18 Pa.C.S.A. § 2701(a)(1).

[4] 18 Pa.C.S.A. § 5503(a)(1).

- 2 -

noted the dispute, ***see id.*** at 6, and solicited further input from the Commonwealth and defense counsel. *Id.* at 5-8. The trial court then proposed the following course of action:

> Court: Well [defense counsel] I can [ ] complete the sentencing today and you could file a post-sentence motion, which the [trial court] would grant, regarding Act 79 and a hearing would be scheduled for that. Would that be acceptable?
>
> Defense Counsel: That would, Judge. I would note we have no doubt that my client's right to carry a firearm is going to be taken immediately by rules and regulations of [parole] so withholding decision on this particular issue, I don't think, is significant for purpose of sentencing.
>
> Court: Alright, very well. So[,] counsel, as long as we're in agreement, we'll proceed with sentencing today. I am going to include Act 79 language in the sentence, allow [defense counsel] to timely file a [post-sentence] motion, at which time, we would schedule it for argument.

N.T. Sentencing Hearing, 5/13/20, at 8.

On May 26, 2020, Appellant timely filed a post-sentence motion for reconsideration solely addressed to the application of Act 79. The trial court convened oral argument on July 10, 2020. Appellant argued that Act 79 did not apply because he was not subject to a protection from abuse order and because he did not share a relationship with victim.[5] N.T. Post-Sentence Motion, 7/10/20, at 8-9.

_____

[5] As we briefly stated above and as we shall develop more fully below, Act 79 proscribes firearm ownership and possession where an individual commits certain offenses, including misdemeanor crimes, against a parent, guardian, child, cohabitor, intimate partner, or others who are similarly situated to the individual.

- 3 -

The Commonwealth argued that Appellant and the victim were "intimate partners" such that Act 79 applied because "obviously, groping the chest of the victim puts you in a position of intimacy and the fact that he did it forcefully clearly satisfies that section of the statute[.]" *Id.* at 14. The Commonwealth further argued "that [Appellant] is also [now] subject to a sentencing order that prohibits him from having any contact with the victim, which by very definition, prevents him from harassing, stalking and so on because that would be contact, any contact, he is also subject to the statute under that section, section (c)(6), as it pertains to the section regarding the federal statute[.]" *Id.* at 15-16. Appellant responded by again pointing out that Act 79 did not apply since he did not share a relationship with the victim. *Id.* at 17 (noting that the parties were "a boy and a girl who are together on occasion, having no sort of preexisting relationship. They're simply together at a party and that's not sufficient to bring them within this specialized language of (c)(6) and (c)(9).")

After the post-sentencing hearing, the trial court denied Appellant's motion. This timely appeal followed.[6]

---

[6] Appellant timely filed a single notice of appeal. Because the judgment of sentence in this case affected only a single trial court docket, Appellant's single notice of appeal fulfilled his obligations under **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). On August 11, 2020, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). Appellant timely complied. The

Appellant raises a single issue in this appeal:

1. Did the trial court commit an error of law in concluding that Act 79 applied to the Appellant's sentencing?

Appellant's Brief at 5.

In his sole issue, Appellant argues that the trial court incorrectly construed Act 79 to apply in this case.[7]  Specifically, Appellant challenges the trial court's determination that Act 79 applied because Appellant committed misdemeanor crimes of domestic violence against an intimate partner within the meaning of 18 U.S.C. § 922(g)(8), which Act 79 incorporated as a firearms disqualification under 18 Pa.C.S.A. § 6105(c)(6).  **See** Trial Court Opinion, 5/13/20, at 3 (applying Act 79 "[b]ecause the charges [Appellant] pleaded guilty to are misdemeanor crimes of domestic violence pursuant to 18 U.S.C. § 922[]").  The court's conclusion rested upon its finding that a relationship existed between Appellant and the victim.  The trial court found an extant

_____

trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on October 1, 2020.

[7] In its 1925(a) opinion, the trial court suggested Appellant waived this issue because he did not raise it at the plea hearing.  While the trial court broached the issue of Act 79 at Appellant's plea hearing, no final determination as to the applicability of Act 79 occurred until the sentencing hearing.  We note that a conviction, together with a final judgment of sentence, triggers the disqualifications set forth in Act 79.  **See Commonwealth v. Appleby**, 856 A.2d 191, 194-195 (Pa. Super. 2004).  Moreover, the trial court entertained argument on the matter at the time of the sentencing hearing and thereafter solicited the respective positions of the parties through post-sentence motions and argument.  Therefore, on the basis of this record, it is clear that Appellant raised the issue at the first opportunity and preserved the issue for appellate review.

relationship between Appellant and the victim because the two were "engaged in an **intimate relationship**, when Appellant groped the victim's chest," which triggered the "intimate partner" language of § 922(g)(8). Trial Court Opinion, 5/13/20, at 2 (emphasis added). Additionally, the trial court determined that Appellant's convictions constituted misdemeanor crimes of domestic violence against a class of protected individuals within the meaning of 18 U.S.C. § 922(g)(9) and as that provision is incorporated in 18 Pa.C.S.A. § 6105(c)(9). In short, Appellant disputes his firearms disabilities adopted under the Act 79 amendments, as incorporated at both § 6105(c)(6) and § 6105(c)(9), since he lacked the required relationship with the victim.

To properly analyze Appellant's challenge to the application of Act 79 and the amendments it brought to the UFA and PFA, we must interpret the relevant statutory provisions. Issues of statutory interpretation and application present questions of law. *Commonwealth v. Lutz-Morrison*, 143 A.3d 891, 894 (Pa. 2016). In analyzing whether specific offenses trigger the disqualifying provisions of § 6105, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Clegg*, 27 A.3d 1266, 1269 (Pa. 2011).

The following policies guide our interpretation of the relevant statutes:

[T]he Statutory Construction Act directs courts to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S.[A.] § 1921(a). A statute's plain language generally provides the best indication of legislative intent. In construing the language, however, and giving it effect, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.

***Commonwealth v. Giulian***, 141 A.3d 1262, 1267 (Pa. 2016) (internal citation and quotation omitted.)

We begin our interpretive analysis with 18 Pa.C.S.A. § 6105, which disqualifies persons convicted of certain offenses from the ability to "possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." ***See*** 18 Pa.C.S.A. § 6105(a). Section 6105(c) provides,[8] in relevant part:

> (c) **Other persons.** – In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a):
>
> .   .   .
>
> (6) A person who is the subject of an active final protection from abuse order issued pursuant to 23 Pa.C.S.[A.] § 6108, is the subject of any other active protection from abuse order issued pursuant to 23 Pa.C.S.[A.] § 6107(b), which provided for the relinquishment of firearms during the period of time the order is in effect or is otherwise prohibited from possessing or acquiring a firearm under 18 U.S.C. § 922(g)(8). This prohibition shall terminate upon the expiration or vacation of the order or portion thereof relating to the relinquishment of firearms.

18 Pa.C.S.A. § 6105(c)(6).

The record reflects that no active PFA order was in force in this case. Therefore, we focus on the catchall provision of § 6105(c)(6), incorporated

---

[8] Section 6105(b) enumerates specific crimes that trigger firearms disqualification. As none of those provisions apply to Appellant, we focus our interpretation on the relevant portions of Section 6105(c).

through Act 79, which refers to the federal statute, 18 U.S.C. § 922(g)(8). Under 18 U.S.C. § 922(g)(8):

> (g) It shall be unlawful for any person –
>
> .  .  .
>
>> (8) who is subject to a court order that - -
>>
>>> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>>>
>>> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>>>
>>> (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
>>>
>>>> (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;
>>
>> .  .  .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(8). If we assume, *arguendo*, that Appellant entered his plea of *nolo contendere* after a hearing for which he had notice and an opportunity to participate, we are nevertheless unable to agree with the trial court's conclusion that the judgment of sentence in this case restrained

Appellant's conduct toward an intimate partner, as that term is used in § 922(g)(8).

The trial court found that Appellant's judgment of sentence restrained his conduct toward an intimate partner within the meaning § 922(g)(8) based on the "intimate relationship" between Appellant and the victim created when Appellant "groped the victim's chest." Trial Court Opinion, 5/13/20, at 2. The Commonwealth similarly argued "[i]n this case, it can be argued that because [Appellant] and the victim engaged in sexual contact with one another, that the victim stands in a situation similar to a spouse, *i.e.* an intimate relationship or an intimate partner." Commonwealth's Brief at 6 (not paginated). The trial court and Commonwealth thus assert that any type of sexual contact between two individuals creates an intimate partnership between those individuals. We disagree.

Federal law defines intimate partner as:

The term "intimate partner" means, with respect to a person, the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabited with the person.

18 U.S.C. § 921(a)(32). This Court addressed the concept of "intimate partner" for purposes of Act 79 in **Scott v. Shay**, 928 A.2d 312, 315-316 (Pa. Super. 2007). In that case, the victim alleged that she was entitled to protection under Act 79 "by virtue of the fact that Appellant sexually assaulted her." *Id.* at 314-315. We explained:

[Act 79] does not define the term "partners," and it is otherwise unclear whether this term includes the victim of a sex crime.

> Thus, the term "partners" is not free of all ambiguity. Accordingly, we must interpret the term in light of the legislators' intent. As we have already made clear, their intent was to prevent domestic violence and to promote peace and safety within domestic, familial, and/or romantic relationships. There is certainly no domestic, familial or romantic relationship created between an assailant and a victim of a sexual assault. By contrast, the persons who undoubtedly fit the Act's definition of family or household members – *e.g.* spouses, parents, children, relatives, paramours, and persons who undertake romantic relationships – typically share some significant degree of domestic, familial and/or intimate interdependence. There is often an obvious emotional bond. Frequently, these individuals interface in very practical areas of private life – a mutual residence, common family obligations and/or shared involvement in the affairs of day-to-day living. Even in a dating relationship, where the functional interdependence might not be as substantial as in a family, the participants have elected some measure of personal interaction. This interaction often involves emotional or private concerns not unlike those found in family settings, albeit not normally as extensive or as intense. In sum, the persons protected by the Act as family or household members have a connection rooted in blood, marriage, family-standing, or a chosen romantic relationship.

*Id.* at 315. We then said "[s]urely, a victim would not claim to have had a relationship with the attacker based solely on a sex crime. An assailant and a victim do not, by virtue a crime, suddenly have a bond regarding the private matters of life." *Id.*

We reached a similar conclusion in *Evans v. Braun*, 12 A.3d 395 (Pa. Super. 2010). That case involved two coworkers who went on a few dates together, including to a play, a bar, and within the household. We construed "partners" to mean those persons who mutually chose to enter relationships. *Id.* at 398. We concluded that Act 79's language applied in that case because

- 10 -

the parties "mutually chose to enter a dating relationship which involved a romantic bond, albeit short-lived." *Id.* at 399.

Based on these two cases, we cannot agree with the trial court's determination that § 6105(c)(6) barred Appellant from owning or possessing a firearm. At most, Appellant and the victim were mere acquaintances before the incident from which the instant criminal charges arose. There is no obvious emotional bond, or connection rooted in blood, marriage, family-standing, or a chosen romantic relationship here. ***Scott, supra***. Rather, the relationship between Appellant and the victim emerged exclusively from an assault by one stranger upon another. There are a number of criminal sanctions, other than Act 79, that our General Assembly has deemed adequate to deal with such interactions which fall outside the family setting. ***Scott***, 928 A.2d at 316. Therefore, the provisions of Act 79, which seek to remedy inadequacies within the criminal law involving interactions inherent to familial situations, are not intended to reach individuals such as the victim herein. ***Id.*** Hence, Appellant's convictions do not trigger disqualification from gun ownership or possession.

The trial court also found that Appellant was subject to the firearms disqualification set forth at § 6105(c)(9). ***See*** Trial Court Opinion, 5/13/20,

at 3.[9]  Section 6105(c)(9) disqualifies the following persons from ownership

and possession of firearms:

> (9) A person who is prohibited from possessing or acquiring a firearm under 18 U.S.C. § 922(g)(9).  If the offense which resulted in the prohibition under 18 U.S.C. § 922(g)(9) was committed, as provided in 18 U.S.C. § 921(a)(33)(A)(ii) (relating to definitions), by a person in any of the following relationships:
>
>> (i) the current or former spouse, parent or guardian of the victim;
>>
>> (ii) a person with whom the victim shares a child in common;
>>
>> (iii) a person similarly situated to a spouse, parent or guardian of the victim;
>
> then the relationship need not be an element of the offense to meet the requirements of this paragraph.

§ 6105(c)(9).  Under section 6105(c)(9), as cross-referenced with the federal

provision codified at 18 U.S.C. § 922(g)(9), a person who is guilty of a

misdemeanor act of domestic violence is subject to a firearms disqualification.

The federal provision, however, specifically defines a misdemeanor crime of

domestic violence as one that:

> has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse,

---

[9]  While the trial court did not expressly cite this subsection of § 6105(c), it nevertheless concluded, "[b]ecause the charges [Appellant] pleaded [*nolo contendere*] to are misdemeanor crimes of domestic violence pursuant to 18 U.S.C. § 922, this [c]ourt determined Act 79 applies in the instant matter. Trial Court Opinion, 5/13/20, at 3.

> parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A)(ii).  The difference between the federal statute and its Pennsylvania counterpart is that the Pennsylvania provision clarifies that the relationship between an assailant and a victim need not be an element of the crime for purposes of triggering the firearms disqualification.  *See* 18 Pa.C.S.A. § 6105(c)(9).

The record demonstrates that Appellant and the victim did not share the emotional or familial bonds inherent to spousal, parental, or guardian relationships.  Thus, having already determined that Appellant and the victim were not intimate partners, we also conclude, for similar reasons, that they were not similarly situated to a married couple, nor do they share a bond similar to that of cohabitants or even a romantic couple.  Because of this, Appellant's charges do not fit within the definition of misdemeanor crimes of domestic violence.  Therefore, § 6105(c)(9) does not disqualify Appellant from firearms ownership or possession.

Appellant is entitled to relief limited to the removal of the provision in his sentencing order which imposes a firearms disqualification.  Hence, while we affirm Appellant's convictions, we vacate that portion of his judgment of sentence that disqualifies Appellant, in accordance with Act 79, from owning or possessing a firearm.  The remainder of the judgment of sentence is affirmed.

Convictions affirmed. Judgment of sentence vacated only as to the applicability of Act 79. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/12/2021